UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL NO. 3:26-CV-149-SJF |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF NOTRE DAME | ) | |
| DU LAC, | ) | |
| | ) | |
| Defendant. | ) | |

**UNIVERSITY OF NOTRE DAME'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## Table of Contents

**Page**


I. Introduction ........ 1

II. Relevant Facts ........ 2

III. Legal Standards ........ 5

IV. Arguments & Authorities ........ 6

- a) Doe fails to state a breach of contract claim (Count One). ........ 6
  - 1) Indiana law requires that a student alleging a breach of contract claim against a university plead specifics about the alleged contract which Doe failed to plead. ........ 6
  - 2) Doe failed to allege a viable breach of contract claim, and in any event, Notre Dame adhered to its Emergency Actions Policy. ........ 9
  - 3) Doe failed to state a claim for an implied contract. ........ 12
  - 4) Notre Dame did not engage in any bad faith conduct, and its disciplinary decision was not arbitrary or capricious. ........ 12
  - 5) Notre Dame adhered to its Emergency Actions Policy in dismissing Doe. ........ 14
- b) Doe fails to state a claim for "arbitrary and capricious decision making" (Count Two). ........ 15
- c) Doe fails to state a promissory estoppel claim (Count Three). ........ 16
  - 1) School policies do not support a promissory estoppel claim. ........ 16
  - 2) Doe failed to plead promissory estoppel with particularity. ........ 17
  - 3) The promissory estoppel claim fails because it is duplicative of the breach of contract claim. ........ 17

V. Conclusion ........ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*188 LLC v. Trinity Industries, Inc.*,
300 F.3d 730 (7th Cir. 2002) ....................................6

*All–Tech Telecom, Inc. v. Amway Corp.*,
174 F.3d 862 (7th Cir.1999) ....................................18

*Allen v. Butler Univ.*,
No. 1:22-cv-01828-SEB-MG, 2024 WL 3637518 (S.D. Ind. Aug. 2, 2024) ....................................8

*Amaya v. Brater*,
981 N.E.2d 1235 (Ind. Ct. App. 2013).................................... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................5

*Bissessur v. Ind. Univ. Bd. of Trs.*,
581 F.3d 599 (7th Cir. 2009) ....................................7, 12

*Chang v. Purdue Univ.*,
985 N.E.2d 35 (Ind. Ct. App. 2013)....................................7

*Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*,
741 F.3d 769 (7th Cir. 2013) ....................................9

*Cordova v. Univ. of Notre Dame Du Lac*,
No. 3:11-CV-210 RM, 2011 WL 6257290 (N.D. Ind. Dec. 13, 2011)....................................17

*Cuciara v. Blaney*,
2025 WL 2785383 (N.D. Ind. Aug. 12, 2025)....................................2

*Daniels v. Univ. of Notre Dame*,
No. 3:22-CV-698-RLM-JEM, 2023 WL 12117036 (N.D. Ind. Aug. 25, 2023)....................................17

*Decatur Ventures, LLC v. Stapleton Ventures, Inc.*,
373 F. Supp. 2d 829 (S.D. Ind. 2005)....................................18

*Doe v. Butler Univ.*,
696 F. Supp. 3d 520 (S.D. Ind. 2023) ....................................8, 12

*Gagne v. Trs. of Ind. Univ.*,
692 N.E.2d 489 (Ind. Ct. App. 1998)....................................13

*GE Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1072 (7th Cir. 1997) ....................2

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012) ....................6

*Gociman v. Loyola Univ. of Chi.*,
41 F.4th 873 (7th Cir. 2022) ....................7

*Gordon v. Purdue Univ.*,
862 N.E.2d 1244 (Ind. Ct. App. 2007)....................9, 11, 13, 14

*Groeneweg v. Citibank NA*,
2026 WL 943577 (N.D. Ind. April 7, 2026) ....................2

*Lax v. Mayorkas*,
20 F.4th 1178 (7th Cir. 2021) ....................5

*Meisenhelder v. Zipp Exp., Inc.*,
788 N.E.2d 924 (Ind. Ct. App. 2003)....................18

*Norwest Bank, N.A. v. Federal Kemper Life Ins. Co.*,
110 F.Supp.2d 774 (N.D. Ind. 2000) ....................17

*P.D. v. Mt. Vernon Cmty. Sch. Corp.*,
No. 1:07-CV-1048DFHJMS, 2008 WL 1701877 (S.D. Ind. Apr. 10, 2008) ....................16

*Papasan v. Allain*,
478 U.S. 265 (1986)....................6

*Park v. Ind. Univ. Sch. of Dentistry*,
781 F. Supp. 2d 783 (S.D. Ind. 2011), *aff'd*, 692 F.3d 828 (7th Cir. 2012) ....................7, 8, 9

*Sterling Commer. Credit — Mich., LLC v. Hammert's Iron Works, Inc.*,
998 N.E.2d 752 (Ind. Ct. App. 2013)....................16

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir.2010) ....................10

*Thompson v. Trustees of Ind. Univ.*,
Case No. 1:23-cv-02094-TWP-MKK, 2025 WL 26672 (S.D. Ind. Jan. 3, 2025) ....................7, 8, 12, 13

*Trs. of Indiana Univ. v. Spiegel*,
186 N.E.3d 1151 (Ind. Ct. App. 2022).................... *passim*

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) ....................5, 6, 14

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013) ....................................................................................5

*Wright v. Associated Ins. Cos.*,
29 F.3d 1244 (7th Cir. 1994) ....................................................................................6

**Statutes**

Administrative Procedure Act (APA) ..................................................................................16

5 U.S.C. § 701(b)(1) ........................................................................................................16

5 U.S.C. § 702 ..................................................................................................................16

5 U.S.C. § 706(2)(A) ........................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1, 5, 6

Fed. R. Evid. 201 ..................................................................................................................2

Emergency Actions Policy: https://dulac.nd.edu/community-
standards/process/emergency-actions/ ........................................................................3

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant the University of Notre Dame du Lac ("Notre Dame" or the "University") hereby files this Brief in Support of its Motion to Dismiss each claim asserted against it in the Complaint filed by John Doe ("Doe") (ECF 1). In support thereof, Notre Dame respectfully states as follows:

## I. Introduction

During his senior year, Notre Dame student John Doe was charged with two felonies related to photographs and videos that he took of his roommate without consent, while his roommate was nude and/or at various states of being undressed. Based on these felony charges, Notre Dame dismissed Doe with the opportunity to apply for readmission, and ultimately permanently dismissed him. In this lawsuit, Doe asserts claims against Notre Dame for breach of contract, arbitrary and capricious decision making, and promissory estoppel based on its dismissal decision. Doe's Complaint fails to state a claim upon which relief can be granted, so this lawsuit must be dismissed. Among other things, Notre Dame had the authority to dismiss Doe, and the Complaint fails to identify any contract, let alone contractual obligations that Doe was entitled to that Notre Dame allegedly breached.

Doe alleges that he was dismissed and his degree was withheld based on his felony charges, citing Notre Dame's right to take summary action and dismiss a student charged with a felony. (ECF 1 ¶ 9). As such, Doe's dismissal adhered to Notre Dame's published Emergency Actions Policy, which authorizes the University to take summary action and dismiss a student with the opportunity to apply for readmission, if the student is ***charged*** with a felony. Although Doe fails to identify any actual or implied contract that exists between him and Notre Dame, he focuses on the fact that he was dismissed after completing his degree requirements, and that his felony charges were ultimately resolved via a plea agreement which reduced his felony charges to two misdemeanor convictions. These facts do not invalidate Notre Dame's authority to take the action

it did. Consistent with well-established authority, Notre Dame had the discretion to govern its student affairs throughout students' tenure as Notre Dame students in ways that protect its student body and protect the integrity of its degree. If the Court ruled in Doe's favor, it would limit Notre Dame's ability to prevent the misconduct of its students throughout their life as students, as well as to take reasonable and timely steps to safeguard its students from serious criminal conduct, like felony charges, which could jeopardize the safety and wellbeing of University students. For the reasons detailed more below, the Complaint should be dismissed in its entirety.

## II. Relevant Facts

On April 26, 2024, while Doe was an enrolled Notre Dame student, he was charged with one count of felony voyeurism and one count of felony public voyeurism relating to incidents involving his Notre Dame roommate. (ECF 1 at ¶¶ 7-8). The same day that Doe was charged with these felonies, Notre Dame Police Department Detective Captain Crystal Garcia-Betts filed a Supplemental Affidavit in Support Of Probable Cause in Doe's criminal case, which is publicly available (the "Probable Cause Aff."). *See* Ex. A (Declaration of V. Chisara Ezie-Boncoeur) at Ex. 2.[1] The Probable Cause Affidavit describes the nature of Doe's conduct which resulted in the two felony charges, as including, without limitation, that:

> (1) Doe "took photos of Victim 1[2] roommate in his underwear or in the nude";
> (2) "[t]here were also videos of Victim 1 changing his clothing" taken by Doe;
> (3) it was clear that "Victim 1 did not know that he was being photographed or recorded";

---

[1] Notre Dame respectfully requests that the Court exercise its discretion to take judicial notice of the publicly available pleadings from Doe's criminal case which are attached as exhibits to the Motion to Dismiss. *See Groeneweg v. Citibank NA*, 2026 WL 943577, *1 n.1 (N.D. Ind. April 7, 2026) (pursuant to Fed. R. Evid. 201, a court can take judicial notice of the filings on a state court docket); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1072, 1080-81 (7th Cir. 1997) (district court can "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment."); *see also Cuciara v. Blaney*, 2025 WL 2785383, *4 (N.D. Ind. Aug. 12, 2025) (same).

[2] Doe's Notre Dame roommate is Victim 1 referenced in the Probable Cause Affidavit.

(4) Doe also followed his roommate "to the bathroom and placed his phone under the stall to take photos";
(5) when his roommate confronted Doe about this conduct, Doe "did not deny anything"; and
(5) Doe "also told officers that he had done this to other people starting in November of 2023 he was also recording random men in the bathroom."

*See* Ex. A at Ex. 2, p. 1-2; *see also* ECF 1 at ¶ 10 (Doe admits to taking photographs of his roommate without consent). Based on the gravity of Doe's offense, the State requested that Doe "be ordered to have NO CONTACT with Victim 1." Ex. A at Ex. 2, p. 2 (emphasis in original).

In light of the seriousness of Doe's felony charges, on May 2, 2024, Notre Dame "dismissed Plaintiff and withheld his degree based on these felony charges, citing the University's right to take summary action and dismiss a student charged with a felony." (ECF 1 at ¶ 9). Doe alleges that Notre Dame "disregarded Notre Dame's own published policies" when it dismissed him. (ECF 1 at p. 1, Introduction). But Notre Dame's published policies allow it to take summary action and dismiss a student charged with a felony, as set forth under its "Emergency Actions" policy which is published and available online on https://dulac.nd.edu/community-standards/process/emergency-actions/, du Lac: A Guide to Student Life, and which states:

> **If a student is charged with a felony, the University reserves the right to take summary action and dismiss a student with the opportunity to apply for readmission through the Office of Community Standards, or designee**. Similarly, the University may take summary action to dismiss a student with the opportunity to apply for readmission or permanently dismiss any student convicted of a felony.

Ex. A at Ex. 3 ("Emergency Actions Policy") (emphasis added).

Doe's two felony charges were prosecuted in a criminal case before the St. Joseph County Superior Court (the "Criminal Case"). The Criminal Case lasted almost a year. It ended with Doe's ultimate criminal conviction for two misdemeanors for voyeurism and public voyeurism rather than felonies. (ECF 1 at ¶ 14). He was sentenced by the court on March 10, 2025. Ex. A. at Ex. 1. Despite

that timeframe, the Complaint takes issue with the "over nine month[]" timespan of Notre Dame's investigation of the Doe's felony related conduct. (ECF 1 at ¶ 31).

Though the Complaint does not describe the substance of Notre Dame's investigation of Doe's conduct, Doe alleges that it involved a hearing which occurred before the University Hearing Board. (ECF 1 at ¶¶ 12 and 22). Doe also contends that Notre Dame did not provide him with an adequate advisor through the "initial interview process." (*Id*. at ¶ 18). Ultimately, Doe was permanently dismissed as a student from Notre Dame, though the Complaint does not identify pursuant to what policy or procedure. (*Id*. at ¶ 13).

Doe filed this lawsuit against Notre Dame based on his dismissal, which Doe contends breaches an unidentified contract between himself and Notre Dame. As for the existence of an alleged contract between Doe and Notre Dame, and its terms, Doe only alleges as follows: (1) that he had a contractual relationship with Notre Dame based on his enrollment and payment of tuition (ECF 1 at ¶ 26); (2) that unidentified "policies and procedures, including those for disciplinary proceedings, form part of this contract" (*Id*. at ¶ 27); (3) that Doe purportedly performed his obligations under the contract and fulfilled his academic obligations by completing all requirements for graduation (*Id*. at ¶¶ 28-29); (4) that Notre Dame purportedly breached the contract by failing to follow its own procedures including "the 60-day resolution policy (the investigation spanned over nine months) and the requirement to provide adequate advisor support," (*Id*. at ¶¶ 30-31); and (5) that Notre Dame allegedly breached the contract by and imposing a sanction of permanent dismissal and degree denial "that was inconsistent with its stated policies." (*Id*. at ¶ 32).

The Complaint does not attach any contract or exhibits. The Complaint alleges that Notre Dame disregarded its "own published policies," and that Doe was "dismissed" and that his degree was withheld "based on [his] felony charges, citing the University's right to take summary action

and dismiss a student charged with a felony." (ECF 1 at ¶ 9). The Complaint does not identify any specific promise that Notre Dame made to Doe, let alone identify any promise that Notre Dame made to Doe that he was guaranteed a degree regardless of his conduct while a student (no such promise exists). This is not an exhaustive list of all the allegations that are missing from the Complaint concerning an actual contract between Notre Dame and Doe, and any specific breach of existing contract terms.

## III. Legal Standards

When resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and draws all inferences in the plaintiff's favor, but the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8).

In evaluating a motion to dismiss, the Court may consider the complaint, "documents that are attached to the complaint, documents that are central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). "A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, **but a defendant may introduce certain pertinent documents if the plaintiff failed to do so**." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993) (emphasis added). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id*.;

*See id.* at 432 (holding that the district court "did not err in refusing to exclude the attached documents [to a motion to dismiss] nor in considering Zenith's motion as one for dismissal for failure to state a claim rather than one for summary judgment."); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."); *Papasan v. Allain,* 478 U.S. 265, 268 n. 1 (1986) (judicial notice of public records); *188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) (documents referred to in complaint and central to claim); *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994) (same).[3]

## IV. Arguments & Authorities

Doe asserts three claims against Notre Dame: (1) breach of contract; (2) arbitrary and capricious conduct; and (3) promissory estoppel. None of these claims survive Rule 12(b)(6).

### a) Doe fails to state a breach of contract claim (Count One).

#### 1) Indiana law requires that a student alleging a breach of contract claim against a university plead specifics about the alleged contract which Doe failed to plead.

Indiana law characterizes "the legal relationship between a student and a university as one of implied contract." *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013). Thus, Doe must plead: "(1) what, if any, promises the university made to [the student]; (2) how these promises were communicated; (3) what [the student] promised in return; or (4) how these promises created

[3] Notre Dame attaches three exhibits to its motion to dismiss that the Court may take judicial notice of and/or which constitute a document referred to in the plaintiff's complaint and central to his claims, which the Court may properly consider without converting the motion to dismiss to a motion for summary judgment. *Venture Assocs. Corp.,* 987 F.2d at 431. However, Notre Dame respectfully requests that the Court disregard any of the attached exhibits if considering the exhibits would require the Court to treat this Motion as a summary judgment motion rather than a motion to dismiss.

an implied contract." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603–04 (7th Cir. 2009). "[I]t is not enough for a student to merely state that an implied contract existed and was breached. . . . [A] student must point to an identifiable contractual promise that the defendant failed to honor." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883–84 (7th Cir. 2022). That means "the student's complaint must be specific about the source of the implied contract, the ***exact promises the university made to the student***, and the promises the student made in return." *Id.* at 884 (emphasis added) (quotation omitted); *see Thompson v. Trustees of Ind. Univ.*, Case No. 1:23-cv-02094-TWP-MKK, 2025 WL 26672, *10 (S.D. Ind. Jan. 3, 2025) (granting motion to dismiss where plaintiff failed to identify source of contractual promises).

As courts interpreting Indiana law repeatedly have recognized in the student-university context, the essence of a breach of contract claim is "not that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all." *Park v. Ind. Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 786 (S.D. Ind. 2011) (citing *Ross v. Creighton Univ*., 957 F.2d 410, 416–17 (7th Cir. 1992)), *aff'd*, 692 F.3d 828 (7th Cir. 2012). Indeed, "Indiana courts have taken a very flexible approach to the scope of contractual promises between students and universities," refusing to apply "hornbook rules . . . mechanically where the principal is an educational institution and the result would be to override an academic determination." *Amaya*, 981 N.E.2d at 1240 (citation modified).

Additionally, under Indiana law, a plaintiff must "allege facts to support a conclusion that the university acted 'illegally, arbitrarily, capriciously, or in bad faith.'" *Thompson*, 2025 WL 26672, *9 (quoting *Ross,* 957 F.2d at 417) (granting motion to dismiss breach-of-contract claim against university concerning sexual assault allegations); *see also Chang v. Purdue Univ.*, 985 N.E.2d 35, 47 n.2 (Ind. Ct. App. 2013) (discussing bad faith requirement for breach-of-contract

claims against a university for deviations from policies relating to student disciplinary proceedings and professional misconduct alike)*; Trs. of Indiana Univ. v. Spiegel*, 186 N.E.3d 1151, 1160, n 4. (Ind. Ct. App. 2022) (same).

This approach arises from the substantial deference courts give to schools when dealing with the governance of their academic communities. "[T]o avoid interfering with the 'subjective professional judgment of trained educators, courts have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community.'" *Allen v. Butler Univ*., No. 1:22-cv-01828-SEB-MG, 2024 WL 3637518, *7 (S.D. Ind. Aug. 2, 2024) (quotation omitted). Thus, when addressing breach of contract claims between students and universities, "the sole function of courts is to determine whether the educational institution acted illegally, arbitrarily, capriciously, or in bad faith." *Id*. (quoting *Amaya*, 981 N.E.2d at 1240); *Thompson*, 2025 WL 26672, at *10. That standard applies in all cases involving "professional judgment of trained educators." *Thompson*, 2025 WL 26672, at *9; *Allen*, 2024 WL 3637518, at *9; *Doe v. Butler Univ*., 696 F. Supp. 3d 520, 529 (S.D. Ind. 2023) ("Indiana courts—and federal courts sitting in diversity applying Indiana law—do not treat academic and non-academic discipline differently.").

Applying these principles, courts regularly grant motions to dismiss students' breach of contract claims against universities. *See, e.g., Thompson*, 2025 WL 26672, *9; *Park*, 692 F.3d 828, 831. For example, in *Park*, the Seventh Circuit upheld the district court's dismissal of a breach of contract claim alleging that a university breached its contract by dismissing a student without following the exact disciplinary procedures outlined in its handbook and code of conduct. *Id*. The court explained that, even if the university had not followed the "procedures outlined in its handbooks to the letter," that "does not automatically lead to a finding of breach," as "literal adherence to the internal rules [is] not [] required" where the decision rests on expert judgments.

*Id*. at 831 (quotation omitted). The Seventh Circuit declined to second guess the university's decision, absent some allegation that it was arbitrary or made in bad faith. *Id*. It summarily concluded that the student "ha[d] no state law claim for breach of contract" and affirmed the dismissal for failure to state a claim. *Id*.; *see also Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013) (affirming dismissal of complaint when plaintiff failed to identify "University Statutes" and their contents).

Finally, "the Court's review of an administrative decision of an educational institution is 'not a hearing de novo. Rather, its sole function [is] to determine whether the action was illegal, or arbitrary and capricious. In doing so it must accept the evidence most favorable to support the administrative decision.'" *Gordon v. Purdue Univ*., 862 N.E.2d 1244, 1247-53 (Ind. Ct. App. 2007) (quoting *Riggin v. Board of Trustees of Ball State University,* 489 N.E.2d 616, 625 (Ind. Ct. App. 1986)) (denying motion to amend complaint that failed to allege facts to state a claim for bad faith). Doe's breach of contract claim should be dismissed because it fails to meet these standards.

**2) Doe failed to allege a viable breach of contract claim, and in any event, Notre Dame adhered to its Emergency Actions Policy.**

Doe's breach of contract claim fails for multiple reasons. ***First***, Notre Dame disputes the existence of any contract with Doe that entitled him to the items in question: (1) a conferred degree, regardless of his pre-graduation conduct; (2) an "adequate advisor" during Notre Dame's initial interview process, or (3) Notre Dame's investigation process limited to 60 days. *See e.g.,* ECF 1 at ¶¶ 17-18, 31-32. Because no contract exists granting these specific rights, and Doe certainly has not pointed to any contract where Notre Dame makes such promises, Doe's breach of contract claim fails.

***Second***, and relatedly, the Complaint fails to plead the elements of a breach of contract claim. *Trs. of Indiana Univ.,* 186 N.E.3d at 1158 ("To recover for a breach of contract, a plaintiff

must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach."). Doe fails to identify any specific contract and makes generalizations only about the existence of a contract predicated on his enrollment and tuition paid. (ECF 1, ¶¶ 25-26). The Complaint generally alleges that certain policies and procedures—including those for disciplinary proceedings—form part of the alleged contract, but Doe does not actually identify what these specific policies or procedures are. (*Id*. at ¶ 27). Likewise, Doe alleges that Notre Dame breached its contract by failing to follow its own procedures, but does not identify what actual procedures supposedly applied. (*Id*. at ¶ 31). Doe further alleges that Notre Dame "breached the contract by imposing a sanction of permanent dismissal and degree denial, that was inconsistent with its stated policies[.]" (*Id*. at ¶ 32). But, again, Doe does not identify what these stated policies are. "It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir.2010) (emphasis in original). Here, the Complaint fails to state a breach of contract claim.

*Trustees of Indiana Univ.* highlights how Doe's allegations fail to come close to the level necessary to allow a student's breach of contract claims against a university to proceed. 186 N.E.3d at 1158. Unlike Doe, the students in *Trs. of Indiana Univ.* stated a claim for breach of contract when they alleged that Purdue violated express terms of a written "Residence Hall Contract" during the Covid-19 pandemic when it provided virtual instruction without campus housing, despite terms in a Residence Hall Contract that stated:

> [I]n exchange for "payment of assessed rates[,]" Purdue agreed to provide housing and a meal plan for the 2019-2020 academic year, except during specified vacations "or in the event an emergency is declared by the University."

*Id.* at 1161.

In this context, the Court held that plaintiffs sufficiently asserted "claims for breach of express contract regarding room and board fees." *Id.* at 1162. Doe's claims do not even approach this threshold. In addition to failing to identify any specific written contract, the blanket allegations that Doe was enrolled and paid tuition, and that Doe allegedly performed his obligations under the contract do not create any contract rights to: (1) Doe obtaining a Notre Dame degree, regardless of Doe's conduct while a student and prior to his graduation, (2) having an alleged "adequate advisor" during Notre Dame's initial interview process, or (3) Notre Dame's investigation process being limited to 60 days. *See*, *e.g.,* ECF 1 at ¶¶ 17-18, 31-32. In sum, the Complaint fails to identify any contract, or any specific contract rights that Doe had, that were breached by Notre Dame.

*Gordon v. Purdue Univ*., 862 N.E.2d 1244, 1247-53 (Ind. Ct. App. 2007) also has instructive parallels to Doe's claims. In *Gordon*, Purdue University dismissed a doctoral student who then asserted claims against Purdue for breach of contract, negligence and defamation. The Indiana Court of Appeals affirmed the trial court's ruling that the student failed to state a claim for bad faith breach of contract against the university and affirmed the trial court's dismissal of the student's first amended complaint, and denial of his request to file a second amended complaint. *Id*. at 1252. Among other things, like John Doe here, Gordon failed "to allege that defendant had an obligation to educate him and in bad faith refused to do so." *Id*. at 1249. Gordon also alleged that Purdue failed to comply with its supposed obligation to provide him with a "full or adequate Advisory Committee," but this allegation failed to state a claim for breach of contract against the university. *Id*. at 1248; (ECF 1 at ¶ 22) (allegations about Doe lacking an adequate advisor). Notably, Gordon's proposed second amended complaint "also did not contain allegations of 'the conscious doing of a wrong because of dishonest purpose or moral obliquity' or 'a state of mind affirmatively operating with furtive design or will." *Id*. at 1253. Here, Doe's Complaint suffers from the same pleading

deficiencies. Simply put, Doe fails to identify any contract that Notre Dame purportedly breached that entitles Doe to the rights that he alleges.

**3) Doe failed to state a claim for an implied contract.**

Doe also failed to state a claim for breach of an implied contract, the type of contract that Indiana law generally recognizes between a student and their university. *Amaya,* 981 N.E.2d at 1240. "In effect, the complaint must specify 'the source of the implied contract, the exact promises the university made to the student, and the promises the student made in return.'" *Doe v. Butler Univ*., 696 F. Supp. at 527; *Thompson*, 2025 WL 26672, *10.

Among other things, the Complaint fails to identify: "(1) what, if any, promises the university made to [Doe]; (2) how these promises were communicated; (3) what [Doe] promised in return; or (4) how these promises created an implied contract." *Bissessur,* 581 F.3d at 602 ("The district court correctly concluded that Bissessur failed to point to any specific promise that the University made which established that Bissessur might have had an entitlement to a continuing education, or any other such entitlement."); *Thompson*, 2025 WL 26672, *10 (dismissing breach of contract claim because complaint "fails to identify where these contractual promises are located. [Plaintiff's] failure to identify the source of these promises is fatal to her claims."). Absent these allegations, Count One fails as a matter of law.

**4) Notre Dame did not engage in any bad faith conduct, and its disciplinary decision was not arbitrary or capricious.**

Notre Dame's decision-making is entitled to deference, and Doe also must plead that Notre Dame acted in bad faith in order to allege a breach of contract claim properly. *See e.g., Spiegel*, 186 N.E.3d at 1159, n.4. ("Students must prove bad faith in breach-of-contract cases involving matters of academic discipline and academic achievement, in which courts have traditionally granted universities deference[.]"). "It is well settled that before a court will intervene into the implied

contractual relationship between student and university, there must be some evidence that the university acted arbitrarily or in bad faith." *Amaya,* 981 N.E.2d at 1241 (citing *Neel v. I. U. Bd. of Trs.*, 435 N.E.2d 607, 613 (Ind. Ct. App. 1982)); *Gordon,* 862 N.E.2d at 1252; *Gagne v. Trs. of Ind. Univ.,* 692 N.E.2d 489, 496 (Ind. Ct. App. 1998)); *Thompson*, 2025 WL 26672, *9. Doe fails to plead sufficient facts to support the conclusion that Notre Dame acted arbitrarily or in bad faith. In *Amaya,* the Indiana Court of Appeals explained the high burden associated with establishing bad faith conduct in breach of contract cases asserted by a student against a university, stating:

> In this context, "bad faith is not simply bad judgment or negligence[; r]ather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Gordon,* 862 N.E.2d at 1251. Literal adherence by a university to its internal rules will not be required when the dismissal of a student "rests upon expert judgments as to academic or professional standards and such judgments are fairly and nonarbitrarily arrived at." *Neel,* 435 N.E.2d at 612 (citation omitted). In other words, the sole function of courts is to determine whether the educational institution acted illegally, arbitrarily, capriciously, or in bad faith. *Neel,* 435 N.E.2d at 613; *Gordon,* 862 N.E.2d at 1252; *Gagne v. Trs. of Ind. Univ.,* 692 N.E.2d 489, 496 (Ind.Ct.App.1998), *trans. denied.*

*Amaya*, 981 N.E.2d at 1240 (alterations in original).

Applying this standard, the *Amaya* court held that Indiana University's decision to dismiss a medical student who allegedly cheated on an exam, and in so doing failed to maintain acceptable professional standards, was not arbitrary, capricious, or made in bad faith, as required to support his breach contract claim against the institution. *Id*. at 1240-42. Moreover, the *Amaya* court also concluded that "IUSM substantially followed its published procedures for dismissal." *Id*. at 1241.

Similarly here, Notre Dame's decision to dismiss Doe was not made in bad faith, nor in an arbitrary or capricious way. This is clear considering, among other things, that the dismissal decision followed Doe's receipt of two felony charges of a sexual nature, and was sufficiently egregious that the State requested the issuance of a no contact order to keep Doe away from his roommate. Ex. A. at Ex. 2 p. 2. Further, Doe admitted to taking the pictures and videos of his

roommate without his consent, as well as taking pictures of other random men without consent, demonstrating that Doe's criminal conduct did not stop with his roommate, and could potentially harm other Notre Dame students. (ECF 1 at ¶¶ 10). Likewise, the alleged over nine month timeframe during which Notre Dame investigated Doe's conduct does not constitute bad faith or arbitrary or capricious decision. This is especially clear when the State prosecuted Doe's case for at least eleven months, much longer than the 60 day timeframe in which the Complaint alleges Notre Dame's investigation should have been complete. (*Id*. at ¶¶ 17-18). Doe was not criminally convicted until March 10, 2025. Ex. A at Ex. 1 p.5.

For the foregoing reasons, the Complaint fails to state any allegations supporting the conclusion that Notre Dame acted illegally, arbitrarily, capriciously, or in bad faith, which "is not simply bad judgment or negligence[; r]ather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Gordon,* 862 N.E.2d at 1251.

**5) Notre Dame adhered to its Emergency Actions Policy in dismissing Doe.**

The only concrete policy actually referenced in the Complaint is the Emergency Actions Policy. *See* e.g., ECF 1 at ¶ 9. Notre Dame fully adhered to this policy. The Court can consider Notre Dame's published Emergency Actions Policy at this motion to dismiss phase because it is "referred to in the plaintiff's complaint and [is] central to h[is] claim." *Venture Assocs. Corp.,* 987 F.2d at 431; (ECF 1 at ¶ 9). One of the considerations that the *Amaya* court assessed in ruling that Indiana University's decision to dismiss a medical student who engaged in academic misconduct was not arbitrary or capricious, or made in bad faith was that it "substantially followed its published procedures for dismissal." *Amaya*, 981 N.E.2d at 1241. Notre Dame also "substantially followed its published procedures for dismissal" when it dismissed Doe. *See id.* The published Emergency Actions Policy states:

> **If a student is charged with a felony, the University reserves the right to take summary action and dismiss a student with the opportunity to apply for readmission through the Office of Community Standards, or designee**. Similarly, the University may take summary action to dismiss a student with the opportunity to apply for readmission or permanently dismiss any student convicted of a felony.

Ex. A at Ex. 3.

Reference to the Emergency Actions Policy makes clear that Notre Dame complied with its terms. Doe argues that Notre Dame breached its alleged contract with him (which he claims includes disciplinary policies and procedures), because his felony charges ultimately resolved with misdemeanor convictions. (ECF 1 at ¶¶ 14, 16, 39). However, the Emergency Actions Policy authorizes Notre Dame to act as it did "[i]f a student is charged with a felony"—it does not require that the student be ***convicted*** of a felony. Ex. A at Ex. 3. Notre Dame adhered to its Emergency Actions Policy. Although Notre Dame disputes the existence of a contract, if anything, it complied with the terms of its Emergency Actions Policy, and Doe cannot plead a breach of this policy.

For this reason also, Doe's breach of contract claim fails.

**b) Doe fails to state a claim for "arbitrary and capricious decision making" (Count Two).**

Doe also fails to state a claim for "arbitrary and capricious decision making." Doe does not explain what the elements of this purported claim are, and indeed, "arbitrary and capricious decision making" is not a civil cause of action. As a result, he has not stated a claim upon which relief can be granted for multiple reasons.

***First***, Count Two should be dismissed because it improperly conflates a private right of action with the legal standard of review for a university's academic decision pertaining to a student. Because Doe asserted a breach of contract claim against a university, his claim requires "some evidence that the university acted arbitrarily or in bad faith." *Amaya,* 981 N.E.2d at 1241. As set forth above, Notre Dame's dismissal decision satisfies this standard, and was not arbitrary or

capricious, or made in bad faith. *See supra* at 7-8, 12-14; *see also* Ex. A at Ex. 3. Thus, Count Two seems to simply duplicate Doe's breach of contract claims which should be dismissed for the reasons set forth above.

***Second***, a reviewing court may set aside "agency" actions under the Administrative Procedure Act ("APA") that are "found" to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, Notre Dame is not an agency, and it is not subject to the APA. 5 U.S.C. § 701(b)(1) (defining agency). Likewise, Doe did not suffer any legal wrong because of an agency decision, and as such, he lacks a right of review of his dismissal decision under the APA. 5 U.S.C. § 702. Because there is no private right of action for Doe to assert a claim against Notre Dame for "arbitrary and capricious decision making," Count Two should be dismissed with prejudice because any amendment would be futile. *See P.D. v. Mt. Vernon Cmty. Sch. Corp.*, No. 1:07-CV-1048DFHJMS, 2008 WL 1701877, at *8 (S.D. Ind. Apr. 10, 2008).

Count Two is not a stand-alone civil claim and therefore must be dismissed.

**c) Doe fails to state a promissory estoppel claim (Count Three).**

Finally, Doe's promissory estoppel claim also fails to state a claim upon which relief can be granted for at least three reasons.

**1) School policies do not support a promissory estoppel claim.**

Doe's promissory estoppel claim should be dismissed because Indiana law does not recognize claims of estoppel created by school policies. A promissory estoppel claim consists of five elements under Indiana law: "(1) a promise by the promisor (2) made with the expectation that the promisee will rely thereon (3) which induces reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *Sterling*

*Commer. Credit — Mich., LLC v. Hammert's Iron Works, Inc.*, 998 N.E.2d 752, 757 (Ind. Ct. App. 2013) (citation omitted). Specifically, "Indiana law has been clear that an implied contract exists between student and university, and there isn't an instance in which a court applying Indiana law recognized a promissory estoppel claim in this context." *Daniels v. Univ. of Notre Dame*, No. 3:22-CV-698-RLM-JEM, 2023 WL 12117036, at *7 (N.D. Ind. Aug. 25, 2023) (citing *Higginbottom ex rel. Davis v. Keithley,* 103 F. Supp. 2d 1075, 1083 (S.D. Ind. 1999)). In accordance with this established law, this Court has previously dismissed promissory estoppel claims asserted by a student against Notre Dame tied to its school policies, like Doe's claim. *See, e.g., Daniels,* 2023 WL 12117036, at *7.

**2) Doe failed to plead promissory estoppel with particularity.**

"[A] claim of promissory estoppel must be pled with particularity." *Norwest Bank, N.A. v. Federal Kemper Life Ins. Co*., 110 F.Supp.2d 774, 778 (N.D. Ind. 2000). Count Three should also be dismissed because it fails to meet this pleading requirement. "When estoppel is relied upon as an element of a cause of action, it must be pleaded with particularity, with every essential fact set forth, since nothing can be supplied by inference or intendment." *Id*. Doe's promissory estoppel claim fails to satisfy this standard because, among other things, it does not identify: (1) what specific promises Notre Dame alleged made (ECF 1 at ¶¶ 25-28); (2) what specific policies and procedures contain the promises that Notre Dame allegedly made (*Id*. at ¶ 27); and (3) how Doe particularly relied on those specific promises. *See, e.g., Cordova v. Univ. of Notre Dame Du Lac,* No. 3:11-CV-210 RM, 2011 WL 6257290, at *7 (N.D. Ind. Dec. 13, 2011) (granting motion to dismiss promissory estoppel claim not pleaded with particularity).

**3) The promissory estoppel claim fails because it is duplicative of the breach of contract claim.**

Count Three should also be dismissed because it is duplicative of the breach of contract claim. ***First***, Doe's promissory estoppel claim is not asserted in the alternative to his breach of contract claim. *See All–Tech Telecom, Inc. v. Amway Corp.,* 174 F.3d 862, 868 (7th Cir.1999) (explaining that "[t]he doctrine of promissory estoppel provides **an alternative** basis to consideration for treating a promise as a contractual undertaking.") (emphasis added).

***Second***, this claim is based on alleged promises that mirror the alleged contract terms that are the subject of the breach of contract claim asserted as Count One. Specifically, Doe's breach of contract claim alleges a breach based on "Defendant's policies and procedures, including those for disciplinary proceedings, [which] form part of this contract." (ECF 1 at ¶ 27). Likewise, the promissory estoppel claim contends that "Defendant promised, through its policies and procedures, that it would follow certain disciplinary processes and impose sanctions proportionate to violations." (*Id*. at ¶ 47). In addition, Count Three incorporates by reference all the Complaint's allegations related to the breach of contract claim, stating that the claim "restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein." (*Id*. at ¶ 45). To the extent a valid contract exists between Doe and Notre Dame, Count Three fails because where claims are "founded on a valid written contract between the parties, then the promissory estoppel claim becomes unwarranted surplusage." *Decatur Ventures, LLC v. Stapleton Ventures, Inc.,* 373 F. Supp. 2d 829, 848 (S.D. Ind. 2005); *see also Meisenhelder v. Zipp Exp., Inc.,* 788 N.E.2d 924, 932 (Ind. Ct. App. 2003) (court did not err in granting summary judgment on promissory estoppel claim where "the very promise upon which Meisenhelder's claim of promissory estoppel is premised is the promise embodied in the written employment contract.").

For all these reasons, Doe's promissory estoppel claim should be dismissed with prejudice, as any amendment to the claim would be futile. *Supra* at 16.

## V. Conclusion

For the reasons specified herein, the Complaint should be dismissed. Because any amendment would be futile, Doe's claims should be dismissed with prejudice. Notre Dame also respectfully requests that the Court grant all other relief at equity and law consistent with this disposition.

Dated: May 26, 2026.

Respectfully submitted,

*/s/ Brian E. Casey*
BARNES & THORNBURG LLP
Brian E. Casey (#24939-71)
brian.casey@btlaw.com
V. Chisara Ezie-Boncoeur (#37251-71)
cezie@btlaw.com
201 S. Main St., Suite 400
South Bend, IN 46601-2130
Direct: (574) 237-1273
Facsimile: (574) 237-1125
Email: cezie@btlaw.com

*Attorney for Defendant*
*University of Notre Dame du Lac*

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing was served on all counsel of record via the Court's electronic filing System on the 26th day of May, 2026.

*/s/ V. Chisara Ezie-Boncoeur*
V. Chisara Ezie-Boncoeur