**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

**JOHN DOE,**

**Case No: 3:26-cv-00149-SJF**

***Plaintiff,***

**v.**

**UNIVERSITY OF NOTRE DAME,**

***Defendant.***

---

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [ECF 020]

---

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

FACTUAL BACKGROUND ........ 1

STANDARD OF REVIEW ........ 2

ARGUMENT ........ 3

I. Extrinsic Evidence Is Inadmissible On A Motion To Dismiss ........ 3

II. Indiana Law Governing Student-University Contracts ........ 4

III. Plaintiff Need Not Plead Bad Faith at the Motion-to-Dismiss Stage ........ 7

IV. The Emergency Actions Policy Does Not Authorize Notre Dame's Conduct ........ 9

V. Plaintiff Has Adequately Pleaded A Claim For Breach Of The Implied Covenant of Good Faith And Fair Dealing ........ 11

VI. Plaintiff Has Adequately Pleaded a Promissory Estoppel Claim in the Alternative. ........ 13

CONCLUSION ........ 16

## TABLE OF AUTHORITIES

**Cases**

*188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730 (7th Cir. 2002) ................ 4, 13, 14, 15

*Amaya v. Brater*, 981 N.E.2d 1235 (Ind. Ct. App. 2013)............................ 5, 6, 7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)2, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).......................... 7

*Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675-676 (7th Cir. 2016)............ 3

*Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) ........... 2

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) .................................................. 9

*Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501 (7th Cir. 2013) ................ 3, 4

*Gordon v. Purdue Univ.*, 862 N.E.2d 1244 (Ind. Ct. App. 2007) ................ 8, 10, 11

*In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009)..................................... 3

*Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998).............................................. 4

*Neel v. I. U. Bd. of Trs.*, 435 N.E.2d 607 (Ind. Ct. App. 1982)............................... 7

*Peals v. Ind. State Univ.*, 976 N.E.2d 144 (Ind. Ct. App. 2012) .......................... 6, 7

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ................................ 3

*W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670 (7th Cir. 2016)...................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 2

Fed. R. Civ. P. 8........................................................................................................ 8

NOW COMES Plaintiff, by and through his counsel, and submits Plaintiff's Opposition to Defendant's Motion to Dismiss [ECF 020], Plaintiff states the following:

## FACTUAL BACKGROUND

Plaintiff was a senior at the University of Notre Dame who completed all academic requirements for a Bachelor of Arts degree in Political Science. On April 26, 2024, he was charged with one count of felony voyeurism and one count of felony public voyeurism relating to incidents involving his roommate. Charged – not convicted. One day after the felony charges were filed, on May 2, 2024, Notre Dame dismissed Plaintiff and withheld his earned degree. Notre Dame cited "the University's right to take summary action and dismiss a student charged with a felony." The University's investigation spanned over nine months, far exceeding Notre Dame's stated 60-day resolution policy. Notre Dame failed to provide Plaintiff with an adequate advisor during the initial interview process; the assigned advisor never responded to Plaintiff's request for a meeting to discuss the process. On November 27, 2024, after a hearing before the University Hearing Board, Notre Dame found Plaintiff responsible for Sexual Harassment and Other Sex-Based Misconduct but explicitly declined to find him responsible for Fondling. The University imposed permanent dismissal and denied conferral of Plaintiff's degree

despite his having completed all academic requirements for graduation. In the criminal proceeding, the felony charges were reduced to misdemeanors.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. Fed. R. Civ. P. 12(b)(6). A complaint cannot survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A complaint is "plausible on its face" if its factual allegations allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "'Plausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). After Twombly and Iqbal, a plaintiff seeking to survive a motion to dismiss must "plead some facts that suggest a right to relief that is beyond the speculative level." *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009). We have interpreted the standard announced by the Supreme Court as requiring that "the plaintiff ... give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, not did they happen."

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original); *Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675-676 (7th Cir. 2016).

## ARGUMENT

### I. Extrinsic Evidence Is Inadmissible On A Motion To Dismiss

Notre Dame's attempt to inject the criminal affidavit, police reports, and state-court docket into this Rule 12(b)(6) motion is improper and must be rejected. When deciding a motion to dismiss, the Court may consider "documents that are attached to the complaint, documents that are central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501 (7th Cir. 2013). "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730 (7th Cir. 2002); *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501 (7th Cir. 2013). This is a "narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998). When a document is incorporated by reference, "the court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501 (7th Cir. 2013).

Notre Dame's exhibits fall far outside this exception. Plaintiff's Complaint does not reference the criminal affidavit, does not rely on the state-court docket, and does not incorporate any police reports or investigative materials. The Complaint merely alleges that Plaintiff was charged with felonies and later convicted of misdemeanors—facts Notre Dame does not dispute. That limited reference does not open the door for Notre Dame to introduce its own curated selection of criminal-case documents to contradict Plaintiff's allegations or to bolster its preferred narrative.

Notre Dame's motion violates this rule by urging the Court to accept the criminal affidavit as true, to credit the police officer's statements over Plaintiff's allegations, and to treat the affidavit as dispositive of the University's disciplinary justification. That is impermissible at this stage. Nor are the criminal-case filings subject to judicial notice for the truth of the matters asserted. Courts may take notice of the existence of public records, but not of the factual assertions contained within them. The Court should reject Notre Dame's extrinsic evidence and evaluate the motion solely on the well-pleaded allegations of the Complaint, as Rule 12(b)(6) requires.

## II. Indiana Law Governing Student-University Contracts

Indiana law characterizes "the legal relationship between a student and a university as one of implied contract." *Amaya v. Brater*, 981 N.E.2d 1235 (Ind. Ct.

App. 2013). To state a breach-of-contract claim against a university under Indiana law, a student must identify what, if any, promises the university made to [the student]; how these promises were communicated; what [the student] promised in return; or how these promises created an implied contract." *Peals v. Ind. State Univ.*, 976 N.E.2d 144 (Ind. Ct. App. 2012). Indiana courts apply contract law flexibly in the student-university context, refusing to "apply hornbook rules. mechanically where the principal is an educational institution." *Amaya v. Brater*, 981 N.E.2d 1235 (Ind. Ct. App. 2013). Courts recognize that "before a court will intervene into the implied contractual relationship between student and university, there must be some evidence that the university acted arbitrarily or in bad faith." *Amaya v. Brater*, 981 N.E.2d 1235 (Ind. Ct. App. 2013). However, this is a merits question, not a pleading standard.

Notre Dame contends that Plaintiff "fails to identify any contract" and makes only "generalizations" about a contractual relationship ignores the Complained detailed allegations. Plaintiff alleges that his enrollment and payment of tuition created a contractual relationship, and that Notre Dame's own disciplinary policies—including its 60-day resolution timeline, its advisor-support requirements, and its proportional-sanction framework—formed part of that contract. These are precisely the types of promises Indiana courts recognize as enforceable in implied student-university contracts.

Plaintiff also identifies specific breaches: Notre Dame promised a 60-day resolution period but conducted an investigation lasting more than nine months; it promised adequate advisor support but failed to provide any meaningful assistance during the initial interview; and it promised proportionate sanctions but imposed the most severe penalty, permanent dismissal and degree denial, despite Plaintiff's completion of all academic requirements, his lack of prior disciplinary history, his acknowledgment of wrongdoing, his participation in counseling, the reduction of charges to misdemeanors, and the Hearing Board's finding of no intent to harm. These allegations easily satisfy Rule 8. They identify the contractual promises, the manner in which they were communicated, and the precise ways Notre Dame violated them. Nothing more is required at this stage. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

Notre Dame's reliance on *Trustees of Indiana University v. Spiegel* is misplaced. In *Spiegel*, the students alleged breach of an express written "Residence Hall Contract" containing specific terms regarding housing and meal plans in exchange for payment of assessed rates. *Amaya v. Brater*, 981 N.E.2d 1235 (Ind. Ct. App. 2013). The fact that those plaintiffs had a written contract with enumerated terms does not mean that only such contracts are cognizable. Indiana law expressly recognizes implied contracts between students and universities based on enrollment,

handbooks, and policies. *Neel v. I. U. Bd. of Trs.*, 435 N.E.2d 607 (Ind. Ct. App. 1982); *Peals v. Ind. State Univ.*, 976 N.E.2d 144 (Ind. Ct. App. 2012); *Gordon v. Purdue Univ.*, 862 N.E.2d 1244 (Ind. Ct. App. 2007). Plaintiff's allegations fit squarely within this framework.

"Bad faith is not simply bad judgment or negligence[; r]ather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Amaya v. Brater*, 981 N.E.2d 1235 (Ind. Ct. App. 2013). Critically, "literal adherence by a university to its internal rules will not be required when the dismissal of a student 'rests upon expert judgments as to academic or professional standards and such judgments are fairly and nonarbitrarily arrived at.'" *Id*. But when a university "substantially follow[s] its published procedures," that is evidence the decision was not arbitrary or made in bad faith. *Id.* At this stage, Plaintiff need only allege facts that, if proven, would show arbitrary or bad-faith conduct. He has done so.

In short, Plaintiff has alleged a valid implied contract, identified the specific promises Notre Dame made, and detailed the ways in which Notre Dame breached those promises. Indiana law requires nothing more at the pleading stage. Notre Dame’s motion to dismiss the contract claim should be denied.

## III. Plaintiff Need Not Plead Bad Faith at the Motion-to-Dismiss Stage

Notre Dame argues that Plaintiff "fails to plead sufficient facts to support the conclusion that Notre Dame acted arbitrarily or in bad faith." This argument confuses the standard for surviving a motion to dismiss with the standard for prevailing on the merits. Indiana law's bad-faith requirement governs judicial review of university decisions as it defines the scope of the court's inquiry at summary judgment or trial. It does not impose a heightened pleading standard at the complaint stage. As the Seventh Circuit has recognized, federal pleading standards govern federal cases, even when state substantive law applies. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021); *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670 (7th Cir. 2016). Under Rule 8, Plaintiff need only plead facts sufficient to state a plausible claim. Fed. R. Civ. P. 8.

Even if Indiana's bad-faith standard applied at the pleading stage, which it does not, Plaintiff has pleaded facts from which bad faith or arbitrary conduct could be inferred. Notre Dame conducted a nine-month investigation in violation of its own 60-day policy; failed to provide the advisor support required by its procedures; imposed permanent dismissal and degree denial on a student who completed all academic requirements, had no prior disciplinary history, admitted wrongdoing, participated in counseling, and was ultimately convicted only of misdemeanors with a sentence of time served; maintained this sanction even after the criminal charges

were reduced from felonies to misdemeanors and the court imposed no punishment beyond the conviction itself.

Notre Dame provides that pursuant to *Gordon v. Purdue University* a student must allege "the conscious doing of a wrong because of dishonest purpose or moral obliquity." But *Gordon* involved a motion for leave to file an amended complaint, not a motion to dismiss an original complaint. *Gordon v. Purdue Univ.*, 862 N.E.2d 1244 (Ind. Ct. App. 2007). The court in *Gordon* held that the proposed second amended complaint still failed to allege bad faith even after multiple opportunities to amend. *Id.*. Here, Plaintiff's first Complaint alleges facts showing a severe sanction grossly disproportionate to the offense and imposed through a process that violated Notre Dame's own policies. That suffices at the pleading stage.

## IV. The Emergency Actions Policy Does Not Authorize Notre Dame's Conduct

Notre Dame argues that it "fully adhered to" and "substantially followed" its Emergency Actions Policy, but the plain language of he policy contradicts that assertation.

The Emergency Actions Policy authorizes two distinct forms of summary action: (1) dismissal with the opportunity to apply for readmission when a student is charged with a felony, and (2) permanent dismissal only when a student is convicted of a felony. Plaintiff was never convicted of a felony. He ultimately pled to two

misdemeanors and received a sentence of time served. Under the policy's express terms, Notre Dame's authority extended only to temporary dismissal with the possibility of readmission—not permanent dismissal and degree denial. By imposing the most severe sanction reserved exclusively for felony convictions, Notre Dame exceeded the scope of its own policy.

This is not a matter of interpretation; it is a matter of plain text. The policy draws a deliberate and meaningful distinction between felony charges and felony convictions. Notre Dame collapses that distinction and asks the Court to treat a misdemeanor conviction as the functional equivalent of a felony conviction. Indiana courts do not permit institutions to rewrite their own policies after the fact to justify an outcome. A. university acts arbitrarily when it deviates from its own published procedures. *Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1252 (Ind. Ct. App. 2007). If Notre Dame intended to reserve permanent dismissal for misdemeanor convictions, it could have written the policy that way. It did not. The University cannot now expand the policy's reach to justify a sanction it had no authority to impose.

It begs the question – do the students of Notre Dame maintain their constitutional rights when they enroll or do they shed those upon signing the contract for educational services? Notre Dame's position raises a troubling implication: that a student charged with a felony, before any adjudication, before any hearing, and

before any factual development, while they are presumed innocent until proven guilty, may be permanently dismissed without the procedural protections the University promises to all students.

Because Plaintiff was convicted only of misdemeanors, permanent dismissal exceeded the policy's scope.

The Emergency Actions Policy does not grant Notre Dame carte blanche to disregard its own procedures or to impose sanctions untethered from the policy's text. In short, Notre Dame's invocation of the Emergency Actions Policy not only fails to support its motion, but it also affirmatively demonstrates that the University acted outside the bounds of its own rules. Notre Dame exceeded its authority, disregarded its procedures, and imposed a sanction reserved for felony convictions despite a misdemeanor disposition easily allows Plaintiff to state a plausible claim for breach of contract and arbitrary decision-making. The motion to dismiss should be denied.

## V. Plaintiff Has Adequately Pleaded A Claim For Breach Of The Implied Covenant of Good Faith And Fair Dealing

Notre Dame seeks dismissal of Count Two on the ground that "arbitrary and capricious decision making" is not a standalone cause of action. Notre Dame is correct that the Administrative Procedure Act does not apply to private universities. But Notre Dame misses the substance of the claim.

Plaintiff does not invoke the Administrative Procedure Act, nor does he assert an APA-style cause of action. Rather, Count Two alleges that Notre Dame acted arbitrarily, capriciously, and unreasonably in a manner that breached the implied covenant of good faith and fair dealing—a covenant that accompanies every contract under Indiana law. The Seventh Circuit has long recognized that Indiana imposes an implied duty on contracting parties not to act in a way that destroys the other party's right to receive the benefits of the agreement. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). A party breaches this covenant when it exercises contractual discretion in a manner that is dishonest, arbitrary, or inconsistent with the reasonable expectations created by the contract. *Id.*

Notre Dame promised procedural fairness, timely resolution, adequate advisor support, and proportionate sanctions. Yet the University imposed the harshest sanction available—permanent dismissal and degree denial—based on felony charges that were later reduced to misdemeanors, maintained that sanction even after the criminal court imposed no punishment beyond time served, and disregarded its own procedural safeguards in the process. These allegations, taken as true, state a classic claim for breach of the implied covenant: Notre Dame exercised its disciplinary discretion in a manner that was arbitrary, disproportionate, and fundamentally inconsistent with the benefits Plaintiff reasonably expected from the

contractual relationship, including the conferral of a degree after completing all academic requirements.

Indiana courts have long recognized that every contract contains an implied covenant of good faith and fair dealing that neither party will act to impair the other's right to receive the benefits of the agreement. *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730 (7th Cir. 2002). A university that promises procedural fairness and proportionate sanctions, but then imposes permanent dismissal based on charges later reduced to minor misdemeanors, acts in bad faith and deprives the student of the benefit of the contractual relationship.

Even if Count Two's title is not phrased in the precise legal terminology Notre Dame prefers, the substance of the claim is unmistakable: Notre Dame exercised its disciplinary authority in a manner that was arbitrary, disproportionate, and inconsistent with the reasonable expectations created by its own policies. Under Rule 8, that is more than sufficient. Count Two states a valid claim for breach of the implied covenant of good faith and fair dealing, and Notre Dame's motion to dismiss it should be denied.

## VI. Plaintiff Has Adequately Pleaded a Promissory Estoppel Claim in the Alternative.

Indiana law permits promissory estoppel claims in the university context. Notre Dame cites *Daniels v. University of Notre Dame* for the proposition that

Indiana courts have not yet recognized a promissory estoppel claim against a university, the absence of a published decision does not create a categorical bar. Indiana law expressly permits plaintiffs to plead contract and promissory estoppel in the alternative, particularly where the defendant disputes the existence or enforceability of a contract. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). Promissory estoppel exists precisely to prevent injustice when a defendant denies the existence of a contractual obligation after inducing reliance. Notre Dame cannot simultaneously argue that no contract exists and that Plaintiff is barred from asserting promissory estoppel. If Notre Dame's position were accepted, a university could avoid all contractual accountability simply by denying the existence of a contract—an outcome Indiana law does not permit.

Promissory estoppel provides "an alternative basis to consideration for treating a promise as a contractual undertaking." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730 (7th Cir. 2002). To state a promissory estoppel claim under Indiana law, a plaintiff must allege "(1) a promise by the promisor (2) made with the expectation that the promisee will rely thereon (3) which induces reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730 (7th Cir. 2002).

Notre Dame promised, through its published policies, that disciplinary investigations would be resolved within 60 days, that students would receive

adequate advisor support, and that sanctions would be proportionate to the violation. These are clear, definite promises communicated to all students, and Notre Dame unquestionably expected students to rely on them when enrolling, paying tuition, and completing degree requirements. Plaintiff did rely on these promises—he enrolled, paid substantial tuition, completed all academic requirements, and participated in the disciplinary process with the expectation that Notre Dame would follow its own procedures. His reliance was both definite and substantial, involving years of academic work and significant financial investment. The injustice is obvious: despite completing all academic requirements, Plaintiff was permanently dismissed and denied his degree through a process that violated the very promises Notre Dame made.

Notre Dame cites *Decatur Ventures, LLC v. Stapleton Ventures, Inc.* for the proposition that "where claims are 'founded on a valid written contract between the parties, then the promissory estoppel claim becomes unwarranted surplusage.'" But that principle applies only where a valid written contract indisputably exists. Here, Notre Dame disputes the existence of a contract throughout its motion. Under these circumstances, Plaintiff is entitled to plead promissory estoppel in the alternative.

Notre Dame relies heavily on the Emergency Actions Policy, which it attached to its motion, arguing that the Court may consider the policy because Plaintiff's Complaint refers to it and it is central to the claim. Even accepting that the

Court may consider the policy, it does not support dismissal for the reasons explained above. The policy authorizes dismissal with opportunity for readmission when a student is charged with a felony, and permanent dismissal when a student is convicted of a felony. Plaintiff was never convicted of a felony. Notre Dame's decision to permanently dismiss Plaintiff thus exceeded the policy's plain terms. If anything, independent examination of the Emergency Actions Policy supports Plaintiff's claim, not Notre Dame's motion. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501 (7th Cir. 2013).

## CONCLUSION

Defendant's Motion to Dismiss should be denied in its entirety. Plaintiff has adequately pleaded viable claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. The case should proceed to discovery where the factual disputes underlying Defendant's arguments can be properly resolved.

Dated: June 16, 2026

Respectfully submitted,

*/s/ Keith Altman*

Keith Altman, Esq.
THE LAW OFFICE OF KEITH ALTMAN
30474 Fox Club Drive
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2026, the above and foregoing document was transmitted via the court's electronic filing system, notifying all parties of record.

*/s/ Keith Altman*
Keith Altman, Esq.